We'll proceed with the United States v. Campbell. Mr. Nettles, we'll hear from you first. Good morning, and may it please the Court, Mr. Campbell. Today, the Court wrestles with the question of whether or not the District Court's sentence in this revocation proceeding was plainly unreasonable. In order to answer that question, the Court has to first determine whether or not the defendant's admitted conduct of the South Carolina state law offense of attempted robbery is a crime of violence under the United States Sentencing Commission guidelines. As this Court is well aware, for many cases dealing with the guidelines, there are two prongs to whether or not this offense is a crime of violence. The first would be the force clause. I think it's noteworthy in this particular case that the government does not defend this case as a crime of violence under the force clause. They have not raised that in their briefs at all. Briefly, Your Honor, I will touch on it. In the past, prior to June of 2022, there was a difference of opinion in the courts as to how the force guideline was to be construed. We now have an answer from the Supreme Court. The Supreme Court ruled back in June of 2022 that the force clause covers only offenses whose elements involve force, the use, attempted use, or threatened use of force. It's clear, based on Taylor, that the South Carolina offense of attempted armed robbery does not involve the use, attempted use, or threatened use of force due to the overt act element that's attended to that offense. That being said, unless the court has any questions in regard to the force clause, I'll move to the residual clause. This case sort of puts me in a strange position. The government has taken the position that the residual clause is vague. I'm not going to be a lawyer who stands up here and tells the court that the residual clause is not vague. It is vague. But I think that the court needs to understand that you have the force clause, then you go to the next subsection, which includes enumerated offenses, and then it includes the residual clause. Based on Kaiser and this court's opinion in Campbell, the enumerated offenses in the commentary expand the enumerated offenses in the guidelines. Under Campbell, that expansion of the scope of the number of enumerated offenses is clearly inconsistent with the text of the guideline. Counsel, I'm familiar with other Campbells. I kind of get confused talking about Campbell here. Campbell discusses how the attempted controlled substance offense would be inconsistent because there's to be a long definition of that. Crime of violence is not quite the same, and I can appreciate the argument that it might be inconsistent, but doesn't the residual clause itself make the crime of violence distinguishable from our prior Campbell case? I mean, that language seems to broaden things to create a situation that isn't as directly contravened by the definition as you had in the controlled substance. And you're talking about the enumerated defense clause and the residual clause? Yes, sir. I would answer your question by saying that the enumerated offenses are offenses placed in there by the commission. There are four of them, and they chose which ones to put in there. And by choosing to include some in there, they chose not to include others, and they put those in the commentary. And so based on that teaching from Campbell... What about just the residual clause itself? Let me... Residual clause itself seems to be broad enough to cover. We're talking about... Aren't we talking about attempted armed robbery? Yes, your honor. We are. We are. Why doesn't the residual clause itself cover that? I'll address that question. Can I make one point before I address that question, your honor? We contend in this particular case that the government did not argue the residual clause in the district court below. I understand that you had Johnson facing you and you didn't have Beckles. That's correct. And Beckles came the year later. Fair assessment, your honor. So the argument as to whether or not attempted armed robbery on the merits with a risk analysis that you have to do under the residual clause that courts have done, that the offense has to be violent, purposeful, and aggressive, you have to look to the elements of the South Carolina offense. And in the elements of the South Carolina offense do not necessarily present an offense where there's a serious risk of potential physical injury. And I'll explain why if I can. So as this court is aware, the South Carolina offense of attempted armed robbery has an overt act element. And the overt act element is to be liberally construed. It's fact dependent. And the court has said that in the overt act scenario, the overt act does not have to be the last proximate step before the completion of the offense. It just has to be a step after the preparations have been made. And you have South Carolina law cases. You have the Green case, for instance, which was an attempted criminal sexual conduct where the defendant in that case had online communication with what he thought was a minor and then arranged a meeting with that minor for the purpose of having sexual relations. The court said that that conversation on the phone, that orchestration of the meeting itself was the overt act. But counsel, I mean, so just it seems to that that's I appreciate that. I'm trying to figure out how we look at this issue. And it seems to me there's three ways that you have to prevail on three different avenues, if you will, for finding that it's a crime of violence. One is whether we can look at the application notes. I know your argument is that prior Campbell controls that. But as Judge Niemeyer said, perhaps the residual clause is broad enough that Campbell doesn't control and it fits there. So that's one. Number two is just our precedent. I mean, when you look at our doctor case, you know, that admittedly was under the force clause combined with Mac, which says if you meet the force clause, you're going to meet the residual. Got our precedent there. And then the third is what you're kind of talking about now, I think, a traditional ordinary use sort of claim. And I get your argument that there's is not like it is. You look for the most least violent way. We look to what the ordinary way is. And so I don't know that finding a case is as helpful as looking at it from the ordinary way, or maybe I'm looking at that wrong. But as I understand that, and I may have it wrong, your Honor, and as I understand it, in order to prevail in a lot of these cases previously, prior to Taylor, the defendant couldn't just present some hypothetical as to how the elements interacted. He had to actually show a case that in this case, you know, that raises a question. It's I don't I hesitate to raise it because it gets pretty involved. But the revocation language doesn't focus on a conviction under it focus on conduct. And so it says the actual conduct involved in the revocation. And of course, in this case, he had the gun pointed the gun and attempted to rob and then ended up shooting him in the legs and hitting him with the bullets. So what does the role of the word conduct play? It says conduct that constitutes a crime of violence under federal or state law. Yes, your Honor, I understand that to mean elements. The conduct involves an offense which has elements that are by their nature, you know, present a serious potential risk of harm. What's the actual language say? Conduct that constitutes? It does say conduct, your Honor. That's correct. And how are we supposed to handle that? I mean, it serves a little bit like the Shepard documents, you know, it gives us a little more information on how the statute was violated. Clearly, the conduct in this case under anybody's standard would be violent. But the question is whether the statute restricts us to make that obvious conclusion. Well, it's a new law violation. And that and this court has held repeatedly that in the supervised release violation hearings, you have to apply the categorical approach. And the only way to apply the categorical approach is look to the elements of what that new law violation is. What's the word conduct in there mean? Why didn't they just say which... I mean, it really... It does appear that by using the word conduct and by the categorical approach, they're talking about two different things. I understand that this court has always used the categorical approach when analyzing. And I think the Supreme Court's decision in Davis may cut me off anyway on my inquiry. So let me let you go ahead and make your arguments. I'm satisfied at this point that we have to look at the categorical approach of the crimes being advanced. Well, just briefly, Your Honor, getting back to the Green case, which is State v. Green, when the court said that orchestrating the phone call itself was the overt act. I mean, you could have that here in this particular case when the defendant contacted the person to arrange the meeting. That could be the overt act. And that in and of itself does not present does not present an offense with a serious potential risk of physical injury to another. It's just too attenuated. And in the Nesbitt case, the South Carolina courts have said it is not necessary to subject victims to a face-to-face confrontation with somebody with a deadly weapon. So how do we deal with that? I mean, points well taken on that. There are reported cases that might very well be situations that involve the commission of this crime that are, you know, by their nature, violent. But, you know, in a forced close sort of analysis, that would be problematic. But here we, I think, don't look at whether that can exist in that way that you look at how the crime is ordinarily committed in the ordinary case. And am I missing that? Am I wrong in looking at it that way? Well, I think if you look at this court's case in Carthorne, which was an assault battery on a police officer case, I'll go out on a limb and say maybe that happens with more than just slight touching. And maybe that happens with, in some look at the way the statute can be violated in sort of the least offensive way to determine what the risk was. That's, I mean, maybe you could argue result-wise Carthorne does that. But the test that it articulates that I think has been articulated in James and others is the ordinary case, not whether there's a specific way or a least violent way. I take the position before this court that the ordinary case would be by the elements and that we have an actual reported case that shows how the South Carolina Supreme Court determines what the risk is. Thank you. All right, thank you. We'll have you back. All right, Ms. Cardinale. May it please the court, Kate Cardinale on behalf of the United States, this court should affirm the district court because the court correctly determined that supervised release violation was a grade A violation. And even if the court was incorrect in that determination, it was not unreasonable. It would not, it still should be affirmed because it was not, because it was a harmless error, if an error at all. Turning to the first, the first point, the district court correctly concluded this was a grade A violation. We are arguing under the residual clause as been discussed because South Carolina attempted armed robbery falls within the residual clause because in its ordinary case, its elements include conduct that present a serious potential risk of fiscal injury to another. I want to address some of the points made for my friend on the other side's argument specifically related to the overt act requirement. The cases of Nesbitt and the case that it cites, Quick, actually do limit, have a limitation on this overt act. It needs to be, there must be an actual or present ability to complete the crime. And in Nesbitt, the court actually found that they needed to, that there needed to be an attempt to gain entrance. So, in Nesbitt, it was an attempted burglary of a store. And the court, in trying to figure out if this was an overt act, looked to three different cases. And the two cases that it found were similar were all cases where there either was an attempt to open the door of the a distinction in South Carolina law between robbery and armed robbery. And does the statute define what armed means? The statute defines South Carolina armed robbery is a person who commits, who attempts to commit robbery while armed and with a deadly weapon or representing that they have a deadly weapon. It's a deadly weapon requirement then? Yes. So, in this case, that would eliminate the hypothetical that your colleague presented where you just make the arrangement because we have to have the presence of a gun in order to have completion of the offense, even though it's just attempted. That distinguishes attempted armed robbery from attempted robbery. And so, the presence of a gun, a deadly weapon, I guess it is, not a gun. And a step trying to carry it out presents a high risk of personal injury. I gather that's got to be your point. To clarify, the South Carolina statute, you need to be armed with a deadly weapon or represent that you are armed with a deadly weapon and the individual must reasonably believe that you have it. I don't know if you actually have to have a deadly weapon in that case, but I think the point is still that the conduct, the overt act, it has to be more than the hypothetical in the appellant's brief as being in the car. And I think the case is Nesbitt, that's not enough. An overt act requires something more than that for attempted, South Carolina's attempted armed robbery. And so, I think that the ordinary case, which was discussed, is the proper way to look at this case. And here, South Carolina attempted armed robbery does present a serious potential risk of physical injury to another. Do we have to get into the ordinary case analysis if we think we can look at the application note and apply it here? Is that its own independent route to determining that attempt would be included? I think it can be its own route to get there. I do think that this court doesn't need to get to the commentary, to the application note. I think it's clear, looking at James, looking at the ordinary case approach, that South Carolina attempted armed robbery fits squarely within the residual clause. And so, I don't actually think this court even needs to get to the commentary. So, you agree with Judge Quattlebaum's suggestion that there might be three different routes to get there. One would be just saying this comes within the residual clause because the residual clause is so kind of broadly written. Another is reliance on the commentary on the application note. And a third is kind of the traditional ordinary case assessment. So, I think that I at least see two. The ordinary case is the first one. That's how I see it. Yes, Your Honor. There are two different ways. But I think maybe the clearest and most simplest way is to go to the ordinary case approach used in James in finding that South Carolina attempted armed robbery. What about our Dr. case and our Mac case? Do they essentially, by precedent alone, drive us to the conclusion that it's a crime of violence? I think you can use them, as you mentioned earlier, of getting to kind of the second approach to getting through the commentary approach. I'm not sure it's completely foreclosed through those two cases. I know there have been a series of cases since then. And that's why I think the most straightforward way is through James and the ordinary case approach. And I'd like to raise the Cawthorn case, which was raised a little bit earlier. In that case, it is distinguishable from here. I think, as Judge Quattlebaum noted, we're not looking for kind of the specific case where you might be able to commit the offense and not have physical violence involved. But in Cawthorn, they were really concerned with prescribing a very broad range of conduct. And they explicitly distinguished James and Sykes, which James was the burglary case, and then the Sykes case as well. And so I think this case can also be distinguished. I think it's much more closer to James. I think we also have the closest analog being burglary. I think the face-to-face confrontation risk is here, as it was in James. And I don't think, well, in James, there wasn't a requirement. The burglary didn't require a face-to-face confrontation. The court was just concerned with the risk of that confrontation happening. And I think that's similar here. If there's no further questions on that first point, I'd like to turn to our alternative arguments, the first one being that even if this court were to find an error, it was not plainly unreasonable. In order to be plainly unreasonable, this court has to have determined, it must clearly contravene settled law. And here, this court has not determined whether South Carolina attempted armed robbery is a crime of violence under residual clause. So the government's position is that it's not clearly settled law. I think in the appellant's brief that they concede that the federal classification of robbery offenses as crimes of violence have been in a state of flux, where they point the difference being is for attempt crimes, because South Carolina has had this over-act requirement for a long time. I would posit that that is kind of a distinction without a difference. I think in general, these crimes of violence, the categorical approach has presented quite a challenge for courts, and it has been quite a state of flux. And an example of last summer, still in a state of showing that this has been in a state of flux. Your Honor, even if you were to find that there was an error and it was plainly unreasonable, any error would be harmless, because this court can say with fair assurance that the district of court would have imposed the same sentence anyways, either way. And so I think there are a couple of things. Did the district court announce an alternative variant sentence? The court announced, no, it didn't specifically address a variant, a separate sentence. And did the court explain and justify the sentence, kind of, regardless of the recommended range? Did the court say, you know, regardless of the range, here's why I think this is an appropriate sentence? I don't think the court used that specific language. I don't think it specifically said or found, you know, even if this was a grade B violation, then I would have found this anyways, with the guidelines being different. But that's not the requirement for harmlessness. And I think the court can look to four things to be assured that the court would have found this guideline range appropriate, even if, or found that this sentence was appropriate, even if the guideline range was lower. I think the first is just pointing out that the court found this to be a very serious matter. A firearm was used and it was a significant breach of trust. And because of that, the second point here is that the court found 28 months as to both underlying counts. One of the underlying counts was the Hobbs Act robbery, where the guideline range was 12 to 18 months. And the court went above that, went 10 months above that to 28. And I think this court can look at that and say, the court was willing to go above the guideline range to get to this 28 months. I also think some... But the range on both of them would have been four to 10 months if you were correct that there was an error, right? Yes, that is correct. So it would have been four to 10 months on each. And the court imposed these concurrently. So it's not that far off from imposing a 14 month on each and having it consecutive instead of concurrent would get you to the 28. It's pretty speculative, isn't it? I think we can look to... I think taken together, this court can really can look and see that the 28 months was important for the district court. I think on top of that, another reason why you can see that is the sentencing hearing, the discussion, the big issue was whether or not Hobbs Act robbery was a predicate to 924C. That's where a lot of the argument was spent below. And if there was a question in the district court's mind as to whether or not that would be overturned or whatever reasons not be valid, then having both be 28 months would ensure that it could still go forward, that that sentence would still be upheld. So I think these are just areas and ways that this court can say, taken together, that the court can say with fair assurance that this would have been... Counsel, could I go back to your first argument? And this isn't to really debate the James ordinary case analysis, but you seem to kind of be pushing us that way as opposed to the application notes and our precedent. And is there a reason you're pushing us that way that you care to tell me about other than just your legal strategy you think is best? Or is there some other reason you think we ought to go that route if we think the other route was also viable? I think it's just the clearest on the cases and most straightforward, and that's why I'm pushing that this morning. And if there are no further questions, just briefly conclude that we'd ask this court to affirm the lower court for the reasons mentioned today and in our brief. Thank you very much. Mr. Nuttall? Very briefly, and I'll take this in reversal order, in regard to Judge Ruskin's questions, there is no indication that this judge would have given the same sentence had the guidelines been four to 10 months. And the fact that they're two 28-month sentences should not be read as other than it's just one 28-month sentence. They're run concurrently, and they will both expire at the same time. The BOP treats them the same. In regard to Judge Niemeyer's hypothetical, so the offense of attempted armed robbery only requires the specific intent to commit an armed robbery. If one has the specific intent, one has acquired all of the items necessary to do the offense and then commit an overt act. One has committed the offense. It's not necessary for somebody to point a gun at anybody to be in the proximity of anybody. And the Nesbitt court was quick to say that. And I just wanted to, if there are no other questions, I have nothing. Thank you. We'll come down and greet counsel and then proceed on to our last case.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Allison J. Rushing